ISAAC EISENBERG *vs.* DAVID NOVOGRAD *et al.*

APRIL 30, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

RATHBUN, J. This bill in equity is brought by the owner of a third mortgage on real estate against the owner of the second mortgage to require the latter to pay the sum due on the third mortgage from funds in his hands obtained by foreclosure sale of said real estate and remaining after paying expenses and the amount due on said second mortgage. After hearing in the Superior Court by a justice sitting without a jury said justice entered a decree dismissing the bill and directing the complainant, in accordance with a prayer in respondent Novograd's answer, to cancel the mortgage note and execute a discharge of said third mortgage. The cause is before us on the complainant's appeal from said decree.

Both mortgages were executed by Albert Terkel and his wife, Lena, and both were duly recorded. The complainant's mortgage was made for $3000, on September 18, 1914, to Nathan Falk by whom, for a consideration of $2700, it was assigned and transferred, September 21, 1923, to the complainant. The transfer to complainant was duly recorded. Albert Terkel has deceased, and his widow, Lena who was co-mortgagor, is entitled as owner of the equity in said real estate to all of the surplus in Novograd's hands after payment of junior incumbrances. Respondent Novograd is her brother. It is clear that he purchased the second mortgage for the purpose of foreclosing it and thereby saving as much as possible for his sister. Reference to *Wartell* v. *Novograd*, 48 R. I. 296; 49 R. I. 191, discloses that Novograd

refused to pay any of the surplus in his hands to another holder of a junior mortgage until said holder obtained judgment against Novograd. So far as the record discloses, Novograd should be only a stake holder as to the surplus funds in his hands. Lena Terkel is not a party, but Novograd in his answer prayed that complainant's note be ordered cancelled and his mortgage discharged. The decree appealed from granted this prayer for the benefit of one not a party. However, we will not consider the question of the propriety of such procedure.

Respondent Novograd contends that the mortgage in question was given to said Falk to secure him against loss in transactions by which money was borrowed by Falk for Albert Terkel to be used by him and his partner in a business known as the Boston Clothing Co. It appears that said Falk raised $4000 for Albert Terkel by the following transactions. Terkel conveyed to Falk a parcel of real estate referred to as the Manville property. Falk mortgaged said parcel for $2500 and mortgaged a parcel of his own real estate for $1500. The proceeds from these two mortgages were received by Terkel. The understanding was that the rents of the property conveyed to Falk would be applied by him to the payment of the two said mortgages and that when both mortgages were paid and discharged Falk would reconvey the property conveyed to him by Terkel. Both mortgages were paid and discharged and said property was conveyed by Falk as directed by Terkel.

It is contended by respondent Novograd that complainant's mortgage was given to Falk to secure him against loss in said transactions.

It is apparent that Falk on many occasions rendered financial assistance to Albert Terkel when the Boston Clothing Company was in urgent need of funds. Falk testified that he made a loan of $5000 for a short period to the Boston Clothing Company; that said company not being able to pay the loan when due, Albert Terkel settled the account by giving Falk the mortgage in question for $3000 and Terkel's notes

for $2000. Falk's testimony was corroborated by that of Levin who was Albert Terkel's partner in said clothing company. Falk's testimony is weakened by the fact that it appears that when he went into bankruptcy he filed a schedule setting forth that he held the mortgage in question not as security for a loan but to indemnify him against loss by reason of one loan for $1500 and another for $2500 obtained for said Terkel, one loan being secured by mortgage on Falk's own property and the other loan by mortgage on Terkel's property conveyed to Falk for the purpose of being used for security. On the other hand, Albert Terkel, in the schedule filed in his bankruptcy proceedings listed the mortgage as a valid obligation to Falk for $3000. After reading the record one cannot avoid the suspicion that both Falk and Terkel defrauded their creditors by filing in bankruptcy proceedings false schedules or permitting fraudulent claims to be filed against their respective estates.

It is apparent that the trial justice was by no means satisfied that his decision was correct. He referred to the case as one of a class "which I don't decide with any great satisfaction, as a rule." He stated that: "I can't say but what I have considerable doubt as to this mortgage having been a valid mortgage." He was satisfied that Falk forgave "a good part of the obligations of this man Terkel." The justice suggested that perhaps the mortgage was originally given for indemnity and that the parties thereto agreed that the mortgage become an actual mortgage for $3000 in consideration of Falk's agreement to waive a large amount of indebtness to him from Terkel. The justice apparently assumed that such an agreement would not, even when rights of creditors had not intervened, create a valid mortgage.

We have frequently said that the findings of fact, made from conflicting testimony by a justice of the Superior Court, sitting without a jury, will not be disturbed unless clearly erroneous.

Not being clearly satisfied that the mortgage in question was originally given as security for a loan of $3000, the

trial justice decided that the validity of the mortgage had not been established. We would seriously hesitate before setting aside this finding were it not for the fact that the validity of the mortgage seems to have been established almost, if not quite, beyond question by undisputable proof of admissions against interest.

The transactions by which Falk borrowed $4000 for Albert Terkel were closed in 1917. On March 20, 1917, the mortgage for $1500 on Falk's property was discharged and on March 21, 1917, he reconveyed the Manville property. On March 22, 1917, Falk delivered to the Terkels a receipt for interest for four years in advance on the mortgage in question. The receipt was as follows:

> "Woonsocket, Rhode Island
> March 22, 1917.
>
> Received of Albert Terkel and Lena Terkel, his wife, all interest due on mortgage on property on Hamlet Avenue, in Woonsocket, in the County of Providence and State of Rhode Island, and all interest that may become due on said mortgage from the date hereof until the 21st day of March A. D. 1921.
> Signed and Sealed by Nathan Falk."

This receipt was produced at the trial by respondents' counsel who obtained the receipt from Mrs. Terkel.

Respondents made no attempt to explain why a receipt for interest for four years in advance was taken. If the mortgage in question was given for the purpose of indemnity, as the respondents contend, why did the Terkels take a receipt for interest in advance, instead of a discharge, when the reason for indemnity no longer existed? Falk testified that he agreed to extend credit on the note and mortgage for four years and to waive interest for that length of time, provided the mortgage was paid within that period, and that he gave the receipt as evidence of such extension and waiver.

Again as late as July 5, 1923, the Terkels mortgaged the property in question to a Nathan Wartell. The mortgage deed contained a recital that: "This conveyance is made subject to two prior mortgages in favor of Producers National Bank and Nathan Falk."

Fredrick W. Rounds, assistant manager of the Woonsocket branch of the Industrial Trust Co., testified that in 1925, Mrs. Terkel applied to him for a mortgage on the property in question; that she mentioned the various mortgages already upon the property, including the mortgage to Nathan Falk, and made no suggestion that any one of the mortgages was invalid. This testimony was not contradicted.

The day before the foreclosure sale held by Novograd Mrs. Terkel was in the store of Joseph C. Falk, a cousin of Nathan Falk and "a friend of Mrs. Terkel." The complainant and Herman Terkel, a brother-in-law of Mrs. Terkel, were present. According to the testimony of the complainant and Joseph C. Falk, Mrs. Terkel, Herman Terkel and said Falk endeavored to persuade complainant to waive all interest and accept $3000 in full payment of his mortgage, and Joseph C. Falk was told to pay $3000 to complainant provided he would accept that sum in full payment. Mrs. Terkel admitted being in the store but denied taking part in, or hearing the conversation. Herman Terkel, her brother-in-law, was not called to refute the testimony as to an attempt to persuade complainant to accept $3000.

After the foreclosure proceedings were completed complainant applied to Novograd for payment of the mortgage in question and was referred to his attorney, Mr. Greene. Complainant testified that he called at Mr. Greene's office and that Mr. Greene said: "The only thing is we have the paper that Nathan Falk collected interest from Albert Terkel until 1921. If you want interest from 1921, you will get a check in two days." According to complainant's testimony he was later told by Mr. Greene that Novograd objected to paying more than the principal to complainant

because the other mortgagees were waiving interest. Not only did Mr. Greene fail to take the witness stand and deny the admissions attributed to him but he failed also to cross-examine the complainant upon this portion of his testimony. We can well appreciate the reluctance of members of the bar to testify, particularly before a jury, in a case in which they appear as trial counsel. However, the case was heard by a justice sitting without a jury and the testimony was to the effect that counsel had made admissions sufficient to establish liability against his client. In the circumstances we think it would have been natural for the attorney to take the stand and deny such testimony, if he could truthfully do so, even if he considered it necessary to call other counsel to complete the trial.

We think it was established that complainant's mortgage was, by agreement of the mortgagee and the mortgagors, a valid mortgage for $3000. This point being established it is unnecessary to determine the exact details of the consideration for the mortgage. *Hoy* v. *Bramhall*, 19 N. J. Eq. 565; *Girard Trust Co.* v. *Baird*, 212 Pa. 41, 61A. 507; 1 L. R. A. (N. S.) 405; *Pierce* v. *Le Monier*, 172 Mass. 508.

The complainant is entitled to a decree for the amount of the face of the mortgage note plus interest according to the terms thereof from March 21, 1921.

The appeal is sustained, and the decree appealed from is reversed. The parties may present for our approval a form of decree to be entered in the Superior Court.

*James H. Rickard,* for complainant.
*Greene, Kennedy & Greene,* for respondent.